NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant,*

*v.*

DANIEL ADAM MOSES, *Appellee.*

STATE OF ARIZONA, *Appellant,*

*v.*

KENNETH TUANHUY NGUYEN, *Appellee.*

Nos. 1 CA-CR 18-0115, 1 CA-CR 18-0116
(Consolidated)
FILED 12-6-2018

Appeal from the Superior Court in Mohave County
Nos.  S8015CR201601431
S8015CR201601500
The Honorable Richard Weiss, Judge

**AFFIRMED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Daniel B. Noble
*Counsel for Appellant*

Law Offices of Shawn B. Hamp, Kingman
By Shawn B. Hamp, Virginia L. Crews, Troy Anderson
*Counsel for Appellee Nguyen*

Rideout Law P.L.L.C., Lake Havasu City
By Bradlee Rideout, Wendy Marcus
*Counsel for Appellee Moses*

---

**MEMORANDUM DECISION**

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Michael J. Brown joined.

---

**T H U M M A**, Chief Judge

¶1        The State of Arizona appeals from an order granting Daniel Moses' and Kenneth Nguyen's motions to suppress evidence obtained following a stop of their car by Arizona Department of Public Safety Trooper Dickinson. The dispositive issue in this appeal is whether the superior court abused its discretion in finding, after an evidentiary hearing, that the State failed to show the Trooper had reasonable suspicion for the stop. As discussed below, because the State has shown no reversible error, the order granting Defendants' motions to suppress is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2        Because the ruling turned on the superior court's assessment of credibility, the testimony at the evidentiary hearing on the motion to suppress is summarized in some detail. The evidence shows that, one morning in September 2016, Trooper Dickinson and his drug-sniffing dog were parked in a marked patrol car in the median of Interstate 40 in northwestern Arizona. The Trooper was "just patrolling looking for drug smugglers as well as people that are transporting weapons, credit card fraud, large type[s] of criminal activity." At about 9:20 a.m., he saw a grey sedan, driven by Moses with Nguyen as the passenger, go eastbound past where he was parked.

¶3        While the car drove past at or below the posted speed limit of 75 miles per hour, the Trooper saw the driver "ghost-driving. It's anytime we see a vehicle pass by and they're leaning back so far where they're

2

hiding behind a B-pillar. . . . So that stuck out to me on this vehicle when it passed by me." The Trooper testified that

> [If] any kind of criminal activity [occurs] when somebody's driving a vehicle, they don't want to look at cops. And if they do, they know the cop can see right through them and see that they're guilty or see that they're doing something wrong.
>
> . . . .
>
> It's like when your parents find you and that you're not supposed to do something, and they get that look upon your face. Same look. So it's the shocked expression that you look for these people on their faces when they're driving by.

¶4         After passing by the Trooper, the car moved into the right (or slower) lane, slowed down and continued driving on I-40. The Trooper testified that, "[f]or people that aren't exiting the highway, this [moving to the slower lane and slowing down] is not common behavior, unless they are potentially involved in criminal activity. . . . [F]or this same type of driving behavior, I've gotten numerous amounts of warrants, people with warrants out for their arrest, suspended driver's licenses, DUIs, as well as trafficking of drugs."

¶5         The Trooper "pulled out and caught up to" the car about four miles later. After following for another three miles, the Trooper pulled the car over for "following too close[ly]" in violation of Arizona Revised Statutes (A.R.S.) section 28-730 (2018).[1] The Trooper testified that, before being pulled over, the car, while traveling at an estimated 75 miles per hour, was about "two car lengths," or 40 feet, behind a tractor-trailer, which was traveling at an estimated 70 miles per hour.

¶6         The Trooper collected Defendants' licenses, viewed the rental car agreement on Moses' phone and asked Moses "to exit the vehicle and come back to my patrol vehicle." Moses complied, and the Trooper "began filling out a warning for the unsafe following distance" while he "engaged [Moses] in conversation."

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶7       The Trooper testified Moses and Nguyen appeared nervous. The Trooper added it was odd that Nguyen, the passenger, asked why the car was stopped. "This is very uncommon for a passenger to ever question the reason for a stop. I could probably count on one hand how many times it's happened in my career. It's typically somebody that's involved in some type of criminal activity." The Trooper also testified to observing other irregularities, including that given their stated destination,

> the quickest route of travel would be on I-10, not I-40. And I know that it's a common practice for people that are smuggling that they avoid I-10 because there is twice as many K-9s, and there's checkpoints along I-10 that would hinder being able to move freely. And so I-40 sees an abundance of traffic that should be on I-10 that's on I-40 because they're trying to avoid the traffic points as well as the criminal interdiction officers.

¶8       After giving Moses a written warning, and returning the driver's licenses, the Trooper asked "if they picked up any drugs" or had "anything illegal in the car." The Trooper then asked to check his pulse, and Moses agreed. Using a personal "pulse oximeter that you could buy online that are like 15, 20 bucks," the Trooper read his pulse at "129 beats per minute, and this is extremely high . . . I was a drug recognition expert for years and during that time, anything in excess of 90 beats per minute is considered high." After his request to search the car was denied, the Trooper then "requested another unit to assist on the traffic stop" and asked "Nguyen to step out of the vehicle and stand on the shoulder."

¶9       When he asked permission to "run my K-9 around the exterior of the vehicle," Nguyen "said yeah." The dog alerted, the Trooper told Defendants the dog alerted and Moses said "his jacket had some marijuana in it."

> I asked him if there was any pounds of marijuana in the car, and he had the defeated look, wouldn't answer. I went up to Nguyen and advise[d] him I was going to be searching the vehicle. I asked if I was going to find anything, and he said there was some oil in the vehicle.

A search revealed "a jar containing marijuana" as well as marijuana in duffel bags.

¶10 The State charged Defendants with possession of marijuana for sale, transportation of marijuana for sale and possession of drug paraphernalia. Defendants moved to suppress all evidence obtained as a result of the traffic stop on three grounds: "insufficient reasonable suspicion" for the stop; prolonged detainment in violation of *Rodriguez v. United States*, 135 S. Ct. 1609 (2015); and insufficient probable cause for the search because the K-9 was unreliable.

¶11 After an evidentiary hearing, where the Trooper was the only witness, the superior court granted Defendants' motions on the first two grounds. In doing so, the court first noted the stop was "spurious. And I think that this case shows it may be really no grounds for it." Addressing the testimony regarding the speed of the vehicles, the court noted: "so what choice does a driver have with a truck that couldn't be going 70 miles-an-hour? Because if somebody is going 75, the physics of that equation is that you're driving ahead of the truck in absolutely no time." The court also noted "[t]here was no information" on what "the other traffic was." Having assessed the evidence and credibility, the court repeated that the stop was "spurious" and granted the motion to suppress "on the basis of no reasonable grounds to make a stop." The court also granted the motion on the independent ground of prolonged detainment.

¶12 The State successfully moved to dismiss the charges without prejudice and appealed the suppression order. This court has jurisdiction over the State's timely appeals pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033(A).

## DISCUSSION

¶13 As directed by the Arizona Supreme Court, this court "review[s] a trial court's ruling on a motion to suppress for abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in a light most favorable to sustaining the trial court's ruling." *State v. Adair*, 241 Ariz. 58, 60 ¶ 9 (2016) (citing *State v. Butler*, 232 Ariz. 84, 87 ¶ 8 (2013)). Evidence is not reweighed on appeal but, instead, this court defers to the superior court's factual findings, "including findings on credibility and the reasonableness of the inferences drawn by the officer." *State v. Teagle*, 217 Ariz. 17, 22 ¶ 19 (App. 2007) (citing cases).

This court reviews de novo questions of law and legal conclusion. *State v. Sweeney*, 224 Ariz. 107, 111 ¶ 12 (App. 2010) (citing cases).

**¶14**          The dispositive issue is whether the car properly could be stopped for "following too closely." For that stop to be valid, the State had to show, by sufficient evidence, that the Trooper had "reasonable suspicion" that a violation of A.R.S. § 28-730 occurred. *State v. Starr*, 222 Ariz. 65, 69 ¶ 12 (App. 2009). Reasonable suspicion requires proof by the State of "a particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. U.S.*, 517 U.S. at 693, 696 (1996) (citation omitted). Reasonable suspicion must be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). It "must be more than an inchoate 'hunch,'" but "only requires that police articulate some minimal, objective justification." *Teagle*, 217 Ariz. at 23 ¶ 25 (citation omitted).

**¶15**          The testimony at the evidentiary hearing summarized above, and the parties' briefs on appeal, address a variety of factual and legal issues regarding reasonable suspicion. The State's brief on appeal asserts, with substantial force, that accepting the testimony as true, there was reasonable suspicion to stop the car. But the record reveals that, based on a credibility assessment, the superior court did not accept as true critical aspects of the testimony. On that basis, the court concluded the State had not met its burden to show reasonable suspicion for the stop.

**¶16**          The court started its ruling by stating that the stop was "spurious," which Defendants correctly note means "bogus, fake, false, . . . misleading." The court questioned the plausibility of the Trooper's estimates of speed and distance and found persuasive Defendants' suggestion that the Trooper was "on [Defendants'] tail," in their blind spot and "following too close[ly]" to Defendants while driving near their car. The court opined the tractor-trailer "couldn't be going 70" miles per hour if Defendants were traveling at 75 miles per hour as they approached it, given the "physics of that equation." The court concluded there might "be really no grounds" for a violation of "following too close" where a "defendant . . . is driving a vehicle and a cop is on [their] tail." In the end, the court found "the stop to be spurious" and granted the motion to suppress "on the basis of no reasonable grounds to make a stop."

**¶17**          It is for the superior court at the evidentiary hearing, not this court on appeal, to weigh and assess witness credibility. *Teagle*, 217 Ariz. at 22 ¶ 19. Similarly, this court is directed to view the facts received at an

evidentiary hearing on a motion to suppress "in a light most favorable to sustaining the trial court's ruling." *Adair*, 241 Ariz. at 60 ¶ 9 (citing *Butler*, 232 Ariz. at 87 ¶ 8). On this record, applying these directives and given the superior court's credibility assessment that the stop was spurious, the State has shown no abuse of discretion in that court granting the motions to suppress.[2]

## CONCLUSION

**¶18**        Because the State has shown no reversible error, the superior court's order granting Defendants' motions to suppress is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[2] As a result, this court does not address the additional grounds relied on by the superior court or argued by the parties on appeal.